

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-457-CV**

DARRELL K. WALLANDER                                        APPELLANT

V.

TEXOMA COMMUNITY CREDIT UNION                              APPELLEE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In five issues, appellant Darrell K. Wallander appeals the trial court's order granting the summary judgment motion of appellee Texoma Community Credit Union (Texoma) on its claim for a deficiency judgment following the sale of Wallander's repossessed car.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

**Background Facts**

In 2001, Texoma agreed to make occasional loan advances to Wallander.[2]

On April 27, 2005, Wallander borrowed $6,024.75 from Texoma, agreeing to pay monthly installments on the loan and offering his 1999 Pontiac as security.[3] Wallander defaulted on the loan, and Texoma repossessed the car and sold it. However, the sales price did not cover Wallander's remaining debt.

In May 2008, Texoma filed its petition, seeking a judgment for the unpaid debt of $3,913.86 plus attorney's fees. Texoma attached copies of the loan documents to its petition. Wallander answered by way of general denial.

In September 2008, Texoma filed its motion for summary judgment.[4] The motion included an affidavit from Ken Thomason, Texoma's chief lending officer, swearing to the validity of the loan documents, Wallander's default and his refusal to pay the balance, and Thomason's familiarity with appropriate statutory procedures.

---

[2] As part of the 2001 agreement, Texoma gained the right to take possession of and sell any property given as security for a particular loan advance. The agreement stated that Wallander still had to pay any debt remaining after the property had been sold.

[3] At the time of the 2005 loan, the parties valued Wallander's car at $7,875.

[4] Because of the accrual of interest since filing its petition, Texoma sought $4,341.96 in damages in its summary judgment motion, along with $1,500 in attorney's fees.

Wallander filed a response. He noted that Texoma filed its motion less than two months after he had appeared and answered, and he objected to the summary judgment submission setting based on his alleged insufficient time to prepare his case. He submitted a letter from Texoma dated June 25, 2007, stating that the car had sold for $200 and the deficiency was $6,321.86. He also objected to Thomason's affidavit. He contended that there were genuine material issues of fact, citing the discrepancy between the $200 sales price indicated in Texoma's letter and the $2,608 sales price claimed in Thomason's affidavit.

On October 28, 2008, the trial court granted summary judgment for Texoma in the amount of $4,341.96 plus attorney's fees and interest. This appeal followed.

**The Propriety of the Trial Court's Summary Judgment Decision**

**Summary judgment principles**

We review summary judgments de novo. *Gray v. Nash*, 259 S.W.3d 286, 289 (Tex. App.—Fort Worth 2008, pet. denied). The function of summary judgment practice is not to deprive a litigant of the right to a jury trial but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).

3

Summary judgment is proper when parties do not dispute the relevant facts. *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000).

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.,* 73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). But we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

4

We can only consider the material on file with the trial court as of the time the summary judgment was granted. *Brookshire v. Longhorn Chevrolet Co.*, 788 S.W.2d 209, 213 (Tex. App.—Fort Worth 1990, no writ). Pleadings, even if sworn to, do not constitute summary judgment proof. *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995).

**Analysis**

In five related issues, Wallander asserts that summary judgment is precluded because (1) Texoma's pleadings did not follow the provisions of rule 185 of the rules of civil procedure; (2) Texoma failed to prove that the sale of the car was commercially reasonable or that it complied with sections 9.610 and 9.611 of the business and commerce code; and (3) there are genuine material issues of fact. *See* Tex. R. Civ. P. 185; Tex. Bus. & Com. Code Ann. §§ 9.610–.611 (Vernon 2002).

**Compliance with rule 185 of the rules of civil procedure**

In his second issue, Wallander argues that the trial court erred by granting Texoma's summary judgment motion because Texoma's pleadings did not follow rule 185 to establish sufficient evidence to support a prime facie case in a suit on a sworn account. The rule states,

> When any action or defense is founded upon an open account or other claim for goods, wares and merchandise, including any claim for a liquidated money demand based upon written contract or

5

founded on business dealings between the parties, or is for personal service rendered, or labor done or labor or materials furnished, on which a systematic record has been kept, and is supported by affidavit of the party, his agent or attorney taken before some officer authorized to administer oaths, to the effect that such claim is, within the knowledge of the affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed, the same shall be taken as prima facie evidence thereof, unless the party resisting such claim shall file a written denial, under oath. A party resisting such a sworn claim shall comply with the rules of pleading as are required in any other kind of suit, provided, however, that if he does not timely file a written denial, under oath, he shall not be permitted to deny the claim, or any item therein, as the case may be. No particularization or description of the nature of the component parts of the account or claim is necessary unless the trial court sustains special exceptions to the pleadings.

Tex. R. Civ. P. 185.

When a plaintiff properly complies with rule 185, a defendant must file a sworn denial to defend against the plaintiff's prima facie claim. *Panditi v. Apostle*, 180 S.W.3d 924, 926–27 (Tex. App.—Dallas 2006, no pet.); *see Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex. 1979) (explaining that a verified denial "destroys the evidentiary effect of the itemized account attached to the petition and forces the plaintiff to put on proof of his claim"). When a plaintiff does not comply with the rule, an unsworn general denial is a sufficient initial response to the claim. *See Babwah v. Mem'l City Gen. Hosp. Corp.*, No. 14-93-00240-CV, 1994 WL 35571, at *1 n.1 (Tex.

App.—Houston [14th Dist.] Feb. 10, 1994, no writ) (not designated for publication).

Thus, under either of these scenarios, a defendant may negate a pleading on an itemized account and force the plaintiff to put on proof of its claim. *United Bus. Machs. v. Entm't Mktg., Inc.*, 792 S.W.2d 262, 263–64 (Tex. App.—Houston [1st Dist.] 1990, no writ). However, a plaintiff can still properly recover summary judgment in such a case if it files legal and competent summary judgment evidence establishing the validity of its claim as a matter of law. *See id*. at 264; *see also Birdwell v. Texins Credit Union*, 843 S.W.2d 246, 248 (Tex. App.—Texarkana 1992, no writ) (examining rule 185 and distinguishing between a judgment awarded on the basis of that rule and a judgment awarded on the basis of a separate summary judgment motion). Such is the case here.

Texoma filed an unsworn petition with copies of the loan documents attached. Later, Texoma filed a separate motion for summary judgment with the Thomason affidavit and the same loan documents attached; Texoma did not move for judgment based solely on its petition.

Wallander has not directed us to any cases indicating that a plaintiff's failure to follow the pleading standards of rule 185 precludes that plaintiff from

later successfully litigating a separate summary judgment motion.[5] Therefore, even if Texoma's petition was not initially compliant with rule 185, that noncompliance is immaterial to the trial court's decision to grant its subsequently-filed summary judgment motion. *See Birdwell*, 843 S.W.2d at 248; *United Bus. Machs*., 792 S.W.2d at 264. We overrule Wallander's second issue.

### Statutory requirements related to the commercial reasonableness of Texoma's sale of Wallander's car

In his first, third, and fourth issues, Wallander argues that the trial court erred in granting Texoma's motion because Texoma failed to prove commercial reasonableness in accordance with sections of the business and commerce code. Section 9.610 of the business and commerce code regards disposition of collateral after default (including the requirement of commercial reasonableness), and section 9.611 concerns notification before disposal of collateral. Tex. Bus. & Com. Code Ann. §§ 9.610–.611.[6] These statutory

---

[5] *Enernational Corp. v. Exploitation Eng'rs, Inc.*, which is relied upon by Wallander in his brief, regarded only a summary judgment *on the pleadings* based on compliance with rule 185; it did not concern a separately-filed and independently-supported summary judgment motion under other rules of civil procedure. 705 S.W.2d 749, 750 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

[6] Although Wallander's argument on appeal relies on these sections, he did not discuss or even cite either provision in his two-page summary judgment response at trial.

8

requirements are in the nature of conditions to a creditor's recovery in a deficiency suit. *See Greathouse v. Charter Nat'l Bank-Sw.*, 851 S.W.2d 173, 176 (Tex. 1992).

However, "[i]n a suit brought by a secured creditor to recover a deficiency following the sale of collateral, if a creditor pleads that all conditions precedent have been performed or have occurred, it is required to prove that its disposition of the collateral was commercially reasonable only if the debtor specifically denies it in his answer." *Al Gailani v. Riyad Bank, Houston Agency*, 144 S.W.3d 1, 3 (Tex. App.—El Paso 2003, pet. denied) (citing *Greathouse*, 851 S.W.2d at 176–77). As the San Antonio court of appeals explained,

> For a creditor to recover in a deficiency suit, he must present evidence showing the *commercial reasonableness of the disposition of the collateral and notification of the disposition to the debtor as required by statute*. Prior to the 1992 *Greathouse* decision, the Texas courts of appeals were split as to whether the creditor carried the burden to prove commercial reasonableness or whether commercial unreasonableness was a defense. Today, it is well-settled that the creditor carries the burden: "A commercially reasonable disposition of collateral is in the nature of a condition to a creditor's recovery in a deficiency suit." "The only limits on the creditor's disposition of the collateral is that it must be commercially reasonable, and must be made only after notification to the debtor if required by section 9.504.[7] Then and only then is he entitled to sue for a deficiency." *The creditor's burden can be*

_____

[7] Former section 9.504 of the business and commerce code has been equated to current sections 9.610 and 9.611. *See Caprock Inv. Corp. v. F.D.I.C.*, 17 S.W.3d 707, 712–13 (Tex. App.—Eastland 2000, pet. denied).

9

> *met by pleading specifically or averring generally that all conditions precedent have been met.*

*Friedman v. Atl. Funding Corp.*, 936 S.W.2d 38, 40–41 (Tex. App.—San Antonio 1996, no writ) (citations and footnotes omitted) (emphasis added); *see McGee v. Deere & Co.*, No. 03-04-00222-CV, 2005 WL 670505, at *2 (Tex. App.—Austin Mar. 24, 2005, pet. denied) (mem. op.) (explaining that the "burden of showing commercially reasonable disposition of collateral and notification of disposition to debtor can be met by pleading specifically or averring generally that all conditions precedent to deficiency suit have been met"); *see also* Tex. R. Civ. P. 54 (stating that in pleading performance of a condition precedent, "it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so pled, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party").

In its petition, Texoma alleged, "All conditions precedent to [the] right of recovery on this claim have occurred or have been performed." Wallander answered with a general denial. Because Wallander did not specifically deny the occurrence of the statutory conditions, Texoma's pleading is sufficient, and no proof is needed. *See Greathouse*, 851 S.W.2d at 176–77; *Al Gailani*, 144 S.W.3d at 3; *Friedman*, 936 S.W.2d at 40–41; *cf. Lister v. Lee-Swofford Invs.,*

10

*L.L.P.*, 195 S.W.3d 746, 748 (Tex. App.— Amarillo 2006, no pet.) (analyzing section 9.610 and stating that because the defendants raised the issue of the commercial reasonableness of the sale of the collateral in their pleadings, the plaintiff bore the burden at trial to prove that its sale was commercially reasonable).[8]

---

[8] We note that Thomason's affidavit demonstrated Texoma's compliance with the business and commerce code. In the affidavit, he stated,

> I am [] familiar with the requirements imposed upon a creditor for a commercially reasonable sale and disposition of collateral in keeping with Article 9 of the Texas Business and Commerce Code. I am familiar with what are the reasonable, ordinary and prudent commercial practices of a lender in such situations. I have been involved in repossessions and resale of vehicles on numerous occasions and I am aware of the best procedure available following default in order to obtain the highest price for such vehicles and to dispose of them in a commercially reasonable manner.
>
> An employee of the credit union previously examined the vehicle held as collateral for the loan involved in this lawsuit . . . . All efforts were made to obtain the highest value at the time of the sale of the collateral and to conduct such sale . . . in a commercially reasonable manner. The [vehicle was sold] for a net value of $2,608.00 and credit was applied accordingly to the loan balances owed by [Wallander]. The procedures used in the sale of the collateral were conducted in a commercially reasonable manner as required by the Code.

Thomason's affidavit also recited that Texoma had allowed Wallander "all payments, offsets[,] and credits."

11

We therefore overrule Wallander's first, third, and fourth issues.[9]

**The discrepancy of the summary judgment evidence on damages**

Finally, in the remainder of his fifth issue, Wallander argues that the trial court erred by granting Texoma's motion because he demonstrated the existence of a genuine issue of material fact. The parties agree that Wallander entered into the loan transaction with Texoma, that Wallander's car was repossessed and sold, and that the sales price was less than the debt owed. However, as is described above, the summary judgment record contains a discrepancy about the amount for which the car was sold, with Wallander's summary judgment proof indicating a larger resulting deficiency.

Wallander filed a letter from Texoma stating the car was sold for $200. Texoma filed Thomason's affidavit stating the car was sold for $2,608. Thus, the amount used by Texoma as an offset for Wallander's outstanding debt is actually *higher* than that used by Wallander, giving Wallander a *larger* credit against his debt and leaving him with a *smaller* deficiency.

Even if the price difference is a fact issue, it is not material. It does not affect the decision of the case on its merits and actually weighs in favor of

---

[9] Part of Wallander's fifth issue also concerns the commercial reasonableness of Texoma's sale of his car. For the same reasons, we overrule that portion of his fifth issue.

12

Wallander. We conclude and hold that the summary judgment must be affirmed because the evidence indicates that Texoma is entitled to *at least* the amount of damages contained in the judgment.[10] *See D. G. Bros. v. Pizza Inn, Inc.*, No. 06-98-00151-CV, 2000 WL 16470, at *5 (Tex. App.—Texarkana Jan. 12, 2000, pet. denied) (not designated for publication); *United Bus. Machs.*, 792 S.W.2d at 265; *cf. Roadside Stations, Inc. v. 7HBF, Ltd.*, 904 S.W.2d 927, 933 (Tex. App.—Fort Worth 1995, no writ) (reversing a summary judgment because the appellees did not prove the amount of damages entered in the judgment). We therefore overrule Wallander's fifth issue.

### Conclusion

Having overruled all of Wallander's issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL: LIVINGSTON, GARDNER, and WALKER, JJ.

DELIVERED: June 11, 2009

---

[10] Texoma has not complained that it is owed more.

13