**AFFIRM, REVERSE and REMAND; and Opinion Filed April 5, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01287-CV

### GREGORY S. STRANGE, Appellant
### V.
### HRSMART, INC., Appellee

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-01714-2010**

## OPINION
Before Justices Francis, Murphy, and Evans[1]
Opinion by Justice Murphy

Gregory S. Strange appeals the trial court's summary judgment in favor of HRsmart, Inc. on its breach of a noncompetition contract claim involving human resources management software. Among his eleven issues, Strange contends fact issues exist regarding his competition with HRsmart's product. We reverse the trial court's summary judgment on that ground and remand this case for further proceedings.

## BACKGROUND

HRsmart designs and markets software designed to help companies manage their human resources needs. It hired Strange as a senior software developer on March 1, 2004. Strange held

---

[1] The Honorable Joseph Morris, Retired Justice, was a member of the Panel at the time this case was submitted. Due to his retirement from this Court on December 31, 2012, he did not participate in deciding the case. He was replaced on the panel by Justice David Evans. *See* TEX. R. APP. P. 41.1(a).

a number of positions at HRsmart, including vice-president of international operations, vice-president of product management, and vice-president of application development. While employed by HRsmart, Strange assisted in designing HRsmart's software. Strange voluntarily left HRsmart on October 11, 2009, but he received benefits through the end of January, 2010.

Strange signed an employee confidentiality and non-competition agreement as a condition of his employment in which he agreed, among other things, he would not disclose HRsmart's confidential information, all work product created by him during his employment would belong to HRsmart, and he would not compete with HRsmart for a period of one year following his termination of employment. Specifically, the agreement required that:

> Without the prior written consent of the Company, Employee shall not, directly or indirectly . . . for a period of one (1) year following the termination of employment . . . Engage in or perform services for a competing business. For purposes of this Agreement, a "competing business" is one which provides the same or substantially similar products and services as those provided by the Company during Employee's employment . . . .

According to Strange, he was approached by Lori Morgan, another former HRsmart employee, shortly after he left the company. Morgan said she was struggling to find people to do programming work on her current clients' websites. The two met to discuss Strange performing some of the programming work. During the meeting, Morgan mentioned that she believed a human resources software product for small businesses of fewer than 200 employees would be successful because this portion of the market was not served well by current products. Morgan and Strange agreed to create a series of human resource tools targeting these "micro" businesses. The first tool would be a performance management appraisal form product called ClearVision, which would be followed by other services. They also discussed the non-compete agreement both had signed when hired by HRsmart. Strange concluded ClearVision would not compete with HRsmart's applications, and he and Morgan agreed to work together to create the new product.

Morgan began drafting an initial scope document, and Strange began working on the architectural design.  Morgan filed an application with the Texas Secretary of State on October 13, 2009, seeking reservation of the entity name FireWave Technology.  She represented herself as the president and co-founder of that company.  Three days later, on October 16, she set up the hosting account for the FireWave Technology and ClearVision HQ websites and purchased the domain name *firewavetechnology.com*, which advertised ClearVision.  Strange began coding ClearVision a couple of months later.  As payment for creating the product, Strange was to receive stock and a salary as the chief technology officer when the product began selling.  The company for whom Morgan previously worked, Promotional Products Association International, agreed to be a beta test customer of the ClearVision software.

Strange claimed he attempted to set up a meeting with HRsmart officers in January to make them aware of ClearVision and demonstrate that the product did not compete with HRsmart's products.  He finally met with Pablo Fonolla of HRsmart on February 2 and claims he provided Fonolla a fully functional, working copy of ClearVision and the source code so he could see that the software did not incorporate HRsmart's software or compete with its products.

A little over a month later, HRsmart sent Strange a cease and desist letter claiming ClearVision was "directly competitive with software created and sold by HRsmart."  HRsmart filed suit against Strange the next month, alleging he breached the non-compete agreement by marketing ClearVision within one year of his termination.  The trial court granted HRsmart a temporary restraining order, followed by a temporary injunction, that barred Strange from competing with HRsmart and marketing or selling ClearVision.  The same day as the injunction, HRsmart amended its petition to add Morgan as a defendant.  Strange terminated his employment with Morgan almost three months later and relinquished all rights to ClearVision and to any interest in Firewave Technology.

HRsmart filed its first summary-judgment motion a few months after the injunction, claiming it had established Strange's liability as a matter of law for breach of the noncompetition agreement. Strange responded and, after supplemental briefing, the trial court granted HRsmart's motion. HRsmart then filed a second summary-judgment motion seeking attorney's fees, which the trial court granted. After HRsmart and Morgan agreed to a judgment and permanent injunction against Morgan, HRsmart non-suited its business disparagement claim. The trial court signed a final judgment on September 21, 2010.

Strange, representing himself, appeals the trial court's judgment, raising eleven issues:

*Issue One*: HRsmart did not prove Strange breached the non-compete agreement.

*Issue Two*: HRsmart did not prove it performed its consideration required by the non-compete agreement.

*Issue Three*: HRsmart did not prove the product Strange created was competitive with any HRsmart product.

*Issue Four*: HRsmart did not prove it was damaged (and therefore HRsmart's attorneys violated rule 13 of the Texas Rules of Civil Procedure and Texas Civil Practice and Remedies Code section 9.022(1), (2), and (3)).

*Issue Five*: The trial court erred in granting the temporary restraining order and temporary injunction because the court gave HRsmart the whole object of its suit and failed to preserve the status quo even though HRsmart never proved it was entitled to injunctive relief.

*Issue Six*: The trial court erred in refusing to dissolve the temporary injunction at the end of the one-year non-competition term of the parties' contract (and after Strange no longer owned the product and was not an employee of the company).

*Issue Seven*: The trial court erred in granting HRsmart's motion for partial summary judgment because genuine issues of material fact were still in dispute.

*Issue Eight*: The trial court erred in dismissing Strange's counterclaims.

*Issue Nine*: The trial court erred in granting HRsmart's summary-judgment motion on attorney's fees and final judgment while genuine issues of material fact were still in dispute.

*Issue Ten*: The trial court erred by granting deficient summary judgments without affording Strange the jury trial for which he paid fees.

*Issue Eleven*: The trial court erred by continually engaging in ex parte communications with HRsmart attorneys, including setting motions, requesting attorneys to submit findings and conclusions, and directing them to communicate the court's decisions to Strange.

## DISCUSSION

## Summary Judgment

We begin by addressing Strange's contention he raised issues precluding the granting of summary judgment on HRsmart's breach of contract claim.

### *Standard of Review*

We review HRsmart's summary judgments de novo to determine if it proved its right to prevail as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). It bore the burden to demonstrate that no genuine issues of material fact exist and it is entitled to judgment as a matter of law. *See Nixon*, 690 S.W.2d at 548. A matter is conclusively established for summary-judgment purposes if ordinary minds cannot differ on the conclusion to be drawn from the evidence. *AN Collision Ctr. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191, 193 (Tex. App.—Dallas 2010, no pet.). In our review, we take as true evidence favorable to Strange, the non-movant, indulging every reasonable inference and resolving any doubts in his favor. *Nixon*, 690 S.W.2d at 548–49. As a plaintiff moving for summary judgment, HRsmart was required to prove each essential element of its claim as a matter of law. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

–5–

Our appellate review of the summary judgment is limited to those issues presented to the trial court. *See* TEX. R. CIV. P. 166a(c) (stating issues not expressly presented to trial court in writing shall not be considered on appeal as grounds for reversal); *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) (holding that summary judgment cannot be affirmed on grounds not expressly set out in the motion or response). When, as here, the trial court's orders granting summary judgment do not specify the basis for the ruling, we will affirm the judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

*Analysis*

HRsmart moved for partial summary judgment on its breach of contract claim against both Morgan and Strange, asserting that they contractually agreed not to compete with HRsmart during their employment and within one year after their employment terminated; yet—in direct conflict with these written contracts—they created, marketed, and provided customers with an employee performance management (EPM) software program in direct competition with HRsmart's program. Specifically, HRsmart argued that it was entitled to summary judgment on its breach of contract claim because there were no genuine issues of material fact that (1) valid contracts (the non-compete agreements) were formed between HRsmart and both Strange and Morgan; (2) HRsmart performed its obligations under those contracts; (3) Strange and Morgan breached their contracts by engaging in a competing business within one year after their employment terminated; and (4) HRsmart was damaged as a result of this breach.

In support of its motion, HRsmart attached an affidavit of Evan Fort, its chief technology officer. Fort testified that HRsmart markets its Professional Edition EPM software to companies with fewer than 500 employees and currently has more than 20 clients with fewer than 200 employees. He also claimed that ClearVision offered similar functionality as HRsmart's EPM

–6–

software: both systems rated core and job competencies; both had similar phases so that appraisals were started at the beginning of the year, notes were added throughout the year, and a final performance review was performed at the end; and both systems used the same programming language, design methodology, database engine, layout, and display tool.

Strange responded to the motion, asserting genuine issues of material fact existed regarding (1) the validity of the non-compete agreement; (2) whether Strange breached the agreement by developing a competing product; (3) whether HRsmart performed, tendered performance, or was excused from its contractual obligations; (4) whether Strange stopped working for HRsmart on October 11, 2009; (5) whether HRsmart was damaged; and (6) whether HRsmart was entitled to costs and attorney's fees. He attached as evidence the transcript from the injunction hearing and his own affidavit.

In his affidavit, Strange challenged the basis for Fort's testimony that he had developed a competing product.[2] He detailed the differences in their positions at HRsmart and Fort's lack of knowledge of the platform and technical aspects of the software. He also distinguished the products and testified to the differences in the products and the lack of confidentiality of the technologies used. Specifically, he testified that, contrary to the claims in Fort's affidavit, ClearVision did not have any appraisal phases and did not use the same design methodology as HRsmart's software. He also testified that HRsmart had failed to comply with its obligations under the non-compete agreement.

The transcript of the injunction hearing includes Strange's testimony. He testified that there were three differences between ClearVision and HRsmart's products. One difference he claimed was ClearVision's attempt to reach a different market segment than HRsmart.

---

[2] HRsmart filed objections and motion to strike portions of Strange's affidavit, but the record does not show they were ruled on by the trial court.

ClearVision targeted the "micro business" market of companies with fewer than 200 employees. Morgan indicated in an answer to HRsmart's interrogatories that this was a "niche market" with no competition. Strange testified that HRsmart targeted businesses with more than 500 employees, and to his knowledge had no clients with fewer than 200 employees. He also described a difference in functionality. He stated that ClearVision is "considerably less functional"; for example, it is not configurable. Strange testified that "[t]here's nothing configurable about the application itself, other than to be able to add jobs and users, and to be able to add new metrics into the system." HRsmart's products, on the other hand, are fully customizable. The final difference he testified to involved HRsmart's "Total Talent Management Suite that includes seven other HR modules that are interconnected and interdependent." He stated that HRsmart's application infrastructure "cannot be uncoupled and is deployed with every customer regardless of whether the customer purchased the other tools." In contrast, ClearVision is a single product.

Our appellate review of HRsmart's summary judgment is limited to the issue presented—that Strange and Morgan created, marketed, and provided customers with an EPM software program in direct competition with its program. Taking as true the evidence favorable to Strange, and indulging every reasonable inference and resolving any doubts in his favor, we conclude based on this record that fact questions exist regarding ClearVision's competition with HRsmart's product. Accordingly, we sustain Strange's third issue and reverse the summary judgment as to liability and remand for further proceedings.

Strange challenges in his ninth issue the trial court's award of attorney's fees to HRsmart. Because we conclude summary judgment as to liability was inappropriate, we also reverse the trial court's award of attorney's fees. *See Friedman v. Atl. Funding Corp.*, 936 S.W.2d 38, 42 (Tex. App.—San Antonio 1996, no writ); *Harris Cnty. Appraisal Dist. v. Reynolds/Tex., J.V.*,

884 S.W.2d 526, 529 (Tex. App.—El Paso 1994, no writ). We do not reach issues one, two, four, seven, and ten to the extent those issues are different from issue three. *See* TEX. R. APP. P. 47.1.

### Dismissal of Strange's Counterclaims

Strange argues in his eighth issue that the trial court erred in dismissing his counterclaims. We first observe that when the case is remanded for a new trial, the issue of the timeliness of Strange's counterclaim may be moot. *See generally Reynolds v. Murphy*, 266 S.W.3d 141, 146–47 (Tex. App.—Fort Worth 2008, pet. denied) ("Generally, when a case has been remanded, the cause is pending and amended pleadings may be filed in pending cases pursuant to [Texas Rules of Civil Procedure] rule 63." (quoting *U.S. Fid. and Guar. Co. v. Beuhler*, 597 S.W.2d 523, 524–25 (Tex. Civ. App.—Beaumont 1980, no writ)) (citations omitted)). But in deference to the trial court's management of its docket and because the issue is presented and not otherwise resolved by our disposition of the appeal, we address whether the trial court abused its discretion by striking Strange's counterclaim.

Strange filed his original answer and counterclaim over one year after HRsmart filed its original verified petition, one month after discovery had closed, and three months after the summary judgment submission deadline. Strange's counterclaim included claims that HRsmart was liable to him because it could not show it was damaged by his actions, HRsmart breached the non-compete agreement by its failure to perform its obligations, and Strange's reputation and ability to find employment were impaired by HRsmart's "filing of this frivolous lawsuit." HRsmart filed a motion to strike, asserting Strange's petition was prejudicial on its face under prevailing law, would require additional discovery and motion practice, would reshape the nature of the proceedings, and was a surprise. The trial court granted the motion without specifying the basis for its ruling.

We review a trial court's ruling on amended pleadings under an abuse-of-discretion standard. *Hardin v. Hardin*, 597 S.W.2d 347, 349-50 (Tex. 1980); *Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 622 (Tex. App.—Dallas 2010, no pet.). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). When reviewing matters committed to a trial court's discretion, we may not substitute our own judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992).

A party may amend or respond to pleadings "at such times not to operate as a surprise to the opposite party." TEX. R. CIV. P. 63. But any pleadings filed within seven days of the date of trial or thereafter shall be filed only with leave of the court. *Id.* A judge shall grant such leave unless there is a showing that such a filing will operate as a surprise to the opposite party. *Id.* For the purposes of rule 63, a summary judgment hearing or submission date is a trial. *Goswami v. Metro. Sav. & Loan Assoc.*, 751 S.W.2d 487, 490 (Tex. 1988).

Strange's counterclaim was untimely under rule 63 because it was filed after the trial court had heard and was considering the summary-judgment motion. Strange argues, however, that he previously asserted his claims at the temporary injunction hearing a year earlier and his written pleading only "memorialized" his oral claims. He also argues the claims were not a surprise to HRsmart. Strange provides no record cites to support his oral-pleading assertion in his original brief and the two references he makes in his reply brief could not reasonably be interpreted as assertions of a counterclaim.

Strange was required to obtain leave of the trial court in order to file his untimely counterclaim, which he failed to do. TEX. R. CIV. P. 63. Additionally, HRsmart asserted the counterclaim constituted surprise at the stage of the proceedings filed. Specifically, Strange cited no newly discovered evidence that might justify reopening the case and showed no reason

the claims could not have been brought prior to the close of discovery and the summary judgment submission date. Additionally, Strange asserted a new claim for damage to his reputation and ability to find employment, which would be prejudicial on its face. *See Halmos*, 314 S.W.3d at 623 (citing three defining characteristics when pleading is prejudicial on its face). Pursuit of Strange's new claim for damage to his reputation and ability to find employment involved substantive matters that would reshape the nature of the trial, HRsmart could not have anticipated the claims in light of the development of the case through the summary-judgment proceedings, and the claim would require reopening of discovery and continuance of the trial. *Id*. On this record, the trial court reasonably could have concluded the counterclaim, if allowed, constituted a surprise. We resolve Strange's issue against him.

## Injunctive Relief

In his fifth and six issues, Strange contends the trial court erred regarding the issuance of the temporary restraining order and the issuance and failure to dissolve the temporary injunction. We conclude Strange's appeal of the trial court's temporary restraining order and temporary injunction is moot.

Appellate courts are prohibited from deciding moot controversies. *See Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988). A case becomes moot if at any stage there ceases to be an actual controversy between the parties. *Id*. When, for example, a temporary injunction becomes inoperative due to a change in status of the parties or the passage of time, the issue of its validity is moot. *See Parr v. Stockwell*, 322 S.W.2d 615, 616 (Tex. 1959). Here, the final judgment did not contain injunctive relief, and enforcement of the terms of the non-compete agreement in question has become inoperative. Accordingly, we do not address issues five and six.

## Ex Parte Communications

Strange contends the trial court engaged in continuous ex parte communications with HRsmart's attorneys "when determining the need for hearings, hearing dates, findings of fact and conclusions of law and then directing HRsmart attorneys to communicate these decisions to Strange as though HRsmart attorneys were an arm of the Court." He references documents "#4, #5, #6." The document listed as number four is a string of e-mails between Strange and the trial court clerk regarding settings, some of which include counsel for HRsmart; at least one e-mail was between only Strange and the court clerk, and he does not complain that his communication with the court was improper. The document listed as number five is an excerpt from HRsmart's attorney's fees records showing communications with the court clerk but does not reflect any detail showing that substantive matters were addressed. The sixth document is a standard notice of hearing on HRsmart's motion for summary judgment on the issues of attorney's fees and costs and request for entry of final judgment, which was served on Strange.

Strange requests that counsel and the trial court be reprimanded and sanctioned for these communications. He does not suggest that any of the communications resulted in or reflected bias in the trial court's rulings. The record also does not show that Strange's request for sanctions and reprimand was ever presented to the trial court to allow the trial court and counsel to address his concerns expressed on appeal. Nor has Strange shown that any of the references involved anything other than administrative matters. *See, e.g.*, TEX. CODE OF JUD. CONDUCT, Canon 3B(8)(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B (West 2005) (stating that communications concerning uncontested administrative or procedural matters are not prohibited by the Texas Code of Judicial Conduct). Accordingly, he has presented nothing for us to review. *See* TEX. R. APP. P. 33.1(a)(1). We overrule issue eleven.

**CONCLUSION**

We conclude the trial court did not abuse its discretion in striking Strange's counterclaim, but recognize that issue may become moot on remand. The propriety of the temporary restraining order and temporary injunction issued against Strange was mooted by the final judgment and Strange has presented nothing for us to review regarding alleged ex parte communications by the trial court. The summary-judgment record, however, shows genuine issues of material fact exist regarding ClearVision's competition with HRsmart's product, precluding summary judgment on that basis. We therefore reverse the judgment and remand the case for further proceedings.

/Mary Murphy/
MARY MURPHY
JUSTICE

111287F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

GREGORY S. STRANGE, Appellant

No. 05-11-01287-CV        V.

HRSMART, INC., Appellee

On Appeal from the 199th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 199-01714-2010.
Opinion delivered by Justice Murphy.
Justices Francis and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part and judgment is **REMANDED** to the trial court for further proceedings consistent with the opinion of the court. It is **ORDERED** that appellant GREGORY S. STRANGE recover his costs of this appeal from appellee HRSMART, INC.

Judgment entered this 5th day of April, 2013.

/Mary Murphy/
MARY MURPHY
JUSTICE