

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00820-CV

**IN THE ESTATE OF** Stephen Everett **KOONTZ**, Deceased

From the 198th Judicial District Court, Bandera County, Texas
Trial Court No. CV-14-0000048
Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  November 16, 2016

REVERSED AND REMANDED

Robert F. Stuart, Jr. appeals the trial court's orders granting a no-evidence motion for summary judgment in favor of Glea Hale, as independent executrix of the Estate of Stephen Everett Koontz, and ordering Stuart to pay Hale, in her capacity as independent executrix, $18,029.49 in attorney's fees.  We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

### BACKGROUND

In 2005, Stephen Everett Koontz and Joyce Koontz executed wills leaving all of their property to each other and naming Stuart as the contingent beneficiary to receive the property after the death of the second spouse.  Stuart was Stephen and Joyce's great-nephew and was involved in taking care of the couple since the early 2000's.

In 2010, Stephen executed a new will revoking the 2005 will and leaving all of his property to Hale, his sister. Joyce passed away on February 6, 2013, and Stephen passed away on July 25, 2013.

On October 17, 2013, Hale applied to admit the 2010 will to probate and was appointed independent executrix of Stephen's estate. Hale also applied to have Joyce's 2005 will admitted to probate as a muniment of title. Four months later, Stuart filed a contest to the 2010 will asserting Stephen lacked testamentary capacity when the 2010 will was executed and was under Hale's undue influence. Hale filed a no-evidence motion for summary judgment on Stuart's claims of lack of testamentary capacity and undue influence. The trial court granted Hale's motion and also ordered Stuart to pay attorney's fees, finding that Stuart did not proceed in good faith or with just cause in filing the will contest. Stuart appeals.

## TESTAMENTARY CAPACITY

In his first issue, Stuart contends the trial court erred in granting Hale's no-evidence motion for summary judgment because he raised a fact issue on whether Stephen lacked testamentary capacity when he executed the 2010 will.[1]

A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). When such a motion is filed, "the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion." *Id.* "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* The granting of a no-

---

[1] Stuart does not raise any issue on appeal regarding his claim of undue influence.

evidence motion for summary judgment is improper if "the nonmovant's evidence amounts to more than a scintilla of probative evidence to raise a genuine issue of material fact." *Boerjan v. Rodriguez*, 436 S.W.3d 307, 312 (Tex. 2014) (internal quotations omitted). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (internal citations omitted).

Because Stuart sought to contest Stephen's will after it had been admitted to probate, Stuart had the burden to establish Stephen lacked testamentary capacity when he executed the 2010 will. *Lee v. Lee*, 424 S.W.2d 609, 610 n.1 (Tex. 1968); *Horton v. Horton*, 965 S.W.2d 78, 85 (Tex. App.—Fort Worth 1998, no pet.). A testator has testamentary capacity when he has sufficient mental ability to understand he is making a will, the effect of making a will, and the general nature and extent of his property. *In re Estate of O'Neil*, No. 04-11-00586-CV, 2012 WL 3776490, at *6 (Tex. App.—San Antonio Aug. 31, 2012, no pet.) (mem. op.); *Long v. Long*, 196 S.W.3d 460, 464 (Tex. App.—Dallas 2006, no pet.); *In re Neville*, 67 S.W.3d 522, 524 (Tex. App.—Texarkana 2002, no pet.). The testator also must know his next of kin and the natural objects of his bounty, the claims upon them, and have sufficient memory to collect in his mind the elements of the business transacted and hold them long enough to form a reasonable judgment about them. *In re Estate of O'Neil*, 2012 WL 3776490, at *6; *Long*, 196 S.W.3d at 464; *In re Neville*, 67 S.W.3d at 524. The pivotal issue is whether the testator had testamentary capacity on the day the will was executed. *In re Estate of O'Neil*, 2012 WL 3776490, at *6; *Long*, 196 S.W.3d at 464-65. However, evidence of the testator's state of mind at other times can be used to prove his state of mind on the day the will was executed provided the evidence demonstrates a condition affecting his testamentary capacity was persistent and likely was present at the time the will was executed. *In re Estate of O'Neil*, 2012 WL 3776490, at *6; *Long*, 196 S.W.3d at 465. "To mount a successful

challenge to the testamentary capacity of a testator, based on circumstantial evidence at times other than the execution of the will, the [challenging party] must establish: '(1) that the evidence offered indicates a lack of testamentary capacity; (2) that the evidence is probative of the testator's capacity (or lack thereof) on the day the will was executed; and (3) that the evidence provided is of a satisfactory and convincing character, because probate will not be set aside on the basis of evidence that creates only a suspicion of mental incapacity.'" *In re Estate of O'Neil*, 2012 WL 3776490, at *6 (quoting *In re Estate of Graham*, 69 S.W.3d 598, 606 (Tex. App.—Corpus Christi 2001, no pet.).

In this case, Stuart attached his affidavit to his response to Hale's no-evidence motion for summary judgment, stating:

> My uncle, Stephen Everett Koontz suffered from severe bi-polar depression for decades.
>
> During the summer of 2010 when the Will at issue was executed, my uncle's behavior throughout the summer was becoming more and more erratic and unpredictable.
>
> My uncle had several prolonged episodes of paranoid and delusional behavior that lasted for weeks rather than only days during the summer of 2010.
>
> Part of this behavior was because he was refusing to take his prescribed medications or taking them incorrectly.
>
> The following events are just some of the strange behaviors that took place to the best of my recollection during the summer of 2010:
>
> My uncle would hide his medications in his chair;
>
> He began hiding money in the walls because he thought the Government was going to come take it from him;
>
> He started keeping a 9mm and shotgun next to his chair;
>
> He began to say that people were in the hills watching him;
>
> He began to accuse his devoted wife of over 50 years of having an affair;

He tried to lease property that he used to own to a hunter and became irate when I told him that he couldn't because he no longer owned that property, he said that it was, "his land";

I found him trying to build a gazebo in the middle of the road.

He could not drive and could only walk with a walker. He would not have been able to get to a lawyer to execute a Will on his own.

I was concerned for my uncle and my aunt and their safety because of my uncle's erratic and unpredictable behavior. My aunt and I decided to remove all of the guns from their house that summer so that a horrible accident would not happen.

We decided that summer that my uncle needed more care than we as a family could provide and that a nursing home facility would be best for his safety and care. We chose Bandera Rehabilitation and Healthcare.

Shortly after being admitted there, my uncle tried to commit suicide by placing a plastic bag over his head.

We hold Stuart's affidavit contains more than a scintilla of evidence to raise a genuine issue of material fact with regard to Stephen's testamentary capacity. Stephen's attempt to lease property he longer owned raises a fact issue as to whether he understood the nature and extent of his property.[2] Furthermore, his delusion that his wife of fifty years was having an affair raises a fact issue as to whether this delusion led him to change his 2005 will which had left all of his property to his wife. *See Lindley v. Lindley*, 384 S.W.2d 676, 679 (Tex. 1964) (noting testator lacks testamentary capacity when influenced by an insane delusion or a belief in a supposed state of facts that do not exist and which no rational person would believe); *Orozco v. Orozco*, 917 S.W.2d 70, 74-75 (Tex. App.—San Antonio 1996, writ denied) (same). Finally, because the will was executed on August 12, 2010 and the events described in Stuart's affidavit occurred during the summer of 2010, the evidence is probative of Stephen's lack of testamentary capacity on the day the will was executed.

---

[2] Hale admitted in her deposition that after Stephen executed the 2010 will, he continued to make statements about Stuart inheriting the property, but she never corrected him.

Hale relies heavily on the deposition testimony of the attorney who drafted the 2010 will and who was present at its execution. Although the attorney testified she believed Stephen had testamentary capacity, she also testified she would have taken additional steps to ensure Stephen knew what he was doing if she had known he was suffering from bipolar disorder, had attempted suicide, and had experienced delusional episodes. Furthermore, the attorney testified Stephen told her he was living at home even though he was living in a nursing home. Viewing this testimony in the light most favorable to Stuart, the attorney qualified her opinion regarding Stephen's testamentary capacity and would have taken additional steps if she had been aware of the additional evidence presented in Stuart's affidavit.

Stuart's first issue is sustained, and the trial court's order granting the no-evidence summary judgment is reversed. Since we hold that the trial court improperly granted the no—evidence motion for summary judgment, we also reverse the trial court's award of attorney's fees. *Strange v. HRsmart, Inc.*, 400 S.W.3d 125, 130 (Tex. App.—Dallas 2013, no pet.); *Friedman v. Atl. Funding Corp.*, 936 S.W.2d 38, 42 (Tex. App.—San Antonio 1996, no writ).

## CONCLUSION

The trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings.

Marialyn Barnard, Justice